Filed 6/14/22  Gerro v. BlockFi Lending CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| GEORGE J. GERRO, | B307156, B312647 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. Nos. 20BBCV00308, 20STCV31493) |
| v. | |
| BLOCKFI LENDING LLC et al., | |
| Defendants and Respondents. | |

APPEALS from orders of the Superior Court of Los Angeles County, William Stewart, Judge.  Reversed in part and affirmed in part.

Law Offices of Gerro & Gerro, George J. Gerro and John M. Gerro for Plaintiff and Appellant.

Haynes and Boone, David Clark, Marco A. Pulido and Benjamin L. Mesches for Defendant and Respondent BlockFi Lending LLC.

Severson & Werson, Jan T. Chilton and Kerry Franich for Defendant and Respondent Scratch Services, LLC.

Plaintiff George J. Gerro, cocounsel on this appeal, borrowed a total of $2.275 million from defendant BlockFi Lending LLC (BlockFi) and pledged his bitcoin as collateral. Later, when the value of bitcoin dropped, BlockFi sold Gerro's bitcoin under the terms of the governing loan agreements. Gerro thereafter sued BlockFi and its loan payment processer, Scratch Services, LLC (Scratch) (collectively, Defendants) seeking, among other things, damages, return of his bitcoin, and cancellation of the loan agreements. (*Gerro v. BlockFi Lending et al.* (Super. Ct. L.A. County, 2020, No. 20BBCV00308) (*Gerro I*).)

Defendants moved to stay the case on account of a Delaware forum selection clause. Gerro countered that the case should remain in this state because transfer to Delaware would substantially diminish Gerro's unwaivable California rights in contravention of public policy. Although the trial court concluded that some of Gerro's claims involved unwaivable rights, it also concluded that the Delaware forum would not diminish those rights, and it granted the motion to stay.

Gerro appealed from the order enforcing the Delaware forum selection clause and staying the California case pending resolution of the dispute in Delaware.

While appeal of *Gerro I* was pending, Gerro filed a second lawsuit, *Gerro v. BlockFi Lending et al.* (Super. Ct. L.A. County, 2020, No. 20STCV31493) (*Gerro II*). Based upon many of the same facts and the same loan transactions alleged in *Gerro I*, *Gerro II* purports to seek public injunctive relief under California's Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.), and California's False Advertising Law (FAL; Bus. & Prof. Code, § 17500 et seq.). The trial court granted Defendants' plea in abatement via demurrer to the *Gerro II*

2

complaint on the basis that that there was another action pending between the same parties on the same cause of action. (Code Civ. Proc., § 430.10, subd. (c).) Thus, *Gerro II* was stayed. Gerro filed an interlocutory appeal from this order. We consolidated the appeals for purposes of issuing an opinion.

A plaintiff cannot split a cause of action between two lawsuits that derive from the same primary right. Although Gerro claims his two lawsuits involve different primary rights (*Gerro I* claiming personal injuries and *Gerro II* seeking public injunctive relief), the legal claims asserted in *Gerro II* under the UCL also depend on personal injuries to Gerro. The overlapping personal injuries result in impermissible claim splitting. Accordingly, the trial court did not err in sustaining Defendants' demurrer in *Gerro II*.

The Delaware forum selection clause that was upheld by the trial court contains a predispute jury waiver. Because California has a fundamental policy against such a waiver, Defendants carry the burden of proving that Delaware would not diminish this important right. Under Delaware law, however, contractual provisions that waive the contracting parties' right to trial by jury have been upheld, and relevant case law provides insufficient assurance that Delaware courts will apply California's important public policy to this dispute. Because California's policy against contractual, predispute jury waivers could be violated if *Gerro I* were heard in Delaware, we reverse the trial court's ruling in *Gerro I*.

# BACKGROUND

## A.      Facts Giving Rise to Gerro's Complaints

BlockFi is a Delaware limited liability company and is licensed as a finance lender and broker by the California Department of Business Oversight.[1]

In September 2019, Gerro obtained two loans from BlockFi secured by bitcoin.

In February 2020, Gerro refinanced the loans, which together totaled $2.275 million.

The parties executed a written loan and security agreement for each transaction.  Section 4(d) or 4(e) in each agreement states, "Priority.  Lender shall have actual possession of, and a first priority security interest in, the [c]ollateral."  (Bold omitted.)

Section 5(a)(vi) states that the borrower "pledges, assigns, transfers and delivers to Lender, and grants to Lender a continuing and unconditional first priority security interest in all of Borrower's present and future rights, title and interest in the [collateral, including] . . . [¶] . . . [¶] (vi) all proceeds of the foregoing."

Section 7(a) of each agreement provides: "if at any time, the outstanding principal balance of the [l]oan is equal to or greater than eighty percent (80.0%) of the [c]ollateral [m]arket [v]alue (the 'Accelerated Maximum Loan to Value Ratio'), Lender has the right to immediately liquidate [c]ollateral in such an amount as necessary to establish a loan to value ratio where the total of the

---

[1] Gerro requests that we take judicial notice of BlockFi's California Finance Lender and Broker License on the basis that the trial court took judicial notice of the license.  (Evid. Code, § 459, subd. (a).)  We grant Gerro's request.

outstanding principal balance of the [l]oan plus all other amounts due is equal to or less than seventy percent (70.0%) of the [c]ollateral [m]arket [v]alue."  (Bold omitted.)

Under section 8, if, after a 72-hour notice from the lender that the balance of the loan is equal or greater to 80 percent of the value of the collateral, the borrower does not deposit additional collateral to bring the balance of the loan to 50 percent of the value of the collateral, the borrower is deemed to be in default under the loan.

Section 31 of each agreement states:  "**Governing Law; Acceptable Forums; Waiver of Jury Trial**.  EXCEPT FOR THE ARBITRATION PROVISION, WHERE APPLICABLE, . . . THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE STATE OF DELAWARE WITHOUT REGARD TO ITS CONFLICTS OF LAW PROVISIONS.  BORROWER UNDERSTANDS THAT BORROWER'S AGREEING TO THE APPLICABILITY OF DELAWARE LAW AND VENUE ARE A MATERIAL FACTOR IN LENDER'S WILLINGNESS TO ENTER INTO THIS AGREEMENT.  Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach of this [a]greement, shall, if Lender so elects, be instituted in any court sitting in New Castle County, Delaware."  Further, section 31 states, "Borrower irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to this [a]greement or any [r]elated [d]ocument or the transactions contemplated hereby or thereby (whether based on contract, tort or any other theory)."

Scratch is a Delaware limited liability company.  According to the complaint, "Block[F]i utilizes Scratch as a loan servicer for its loans, and directs borrowers to use the Scratch website's payment portal."

In March 2020, when the value of bitcoin dropped, BlockFi sold Gerro's bitcoin pursuant to section 7(a).

## B.     Procedural Background

### 1.     *In the Trial Court*

Gerro sued BlockFi and Scratch in Los Angeles Superior Court, alleging causes of action for (1) bill quia timet (Civ. Code, § 3412) (against all defendants); (2) determination of adverse claims (Code Civ. Proc., § 1050) (against all defendants); (3) negligence (against BlockFi); (4-9) violation of Commercial Code sections 1309, 9207, subdivision (b)(4), 9207, subdivision (c), 9610, subdivision (b), 9620, subdivision (a), 9620 subdivision (g) (against BlockFi); (10) conversion (against BlockFi); (11) trespass to chattels (against B1ockFi); (12) quantum valebant (against BlockFi); (13) common count—money had and received (against Scratch); (14) breach of contract (against all defendants).  He sought, inter alia, cancellation of the agreements, return of his bitcoin and interest payments, damages for breach of contract in the amount of $1 million, and disgorgement of profits that BlockFi obtained from investing his bitcoin.  He did not allege a violation under the California Financing Law (CFL; Fin. Code, § 22000 et seq.), the UCL, or the FAL.

Defendants moved to stay or, in the alternative, dismiss the action on the ground of forum non conveniens, arguing that the forum selection clause required the matter to be heard in

Delaware.[2]  Gerro responded that his causes of action were based on fundamental California public policy and unwaivable statutory rights that would be diminished in Delaware, including those under Commercial Code section 9626, subdivision (b); the CFL; and California's pawnbroker statutes (Fin. Code, § 21000 et seq.).  No mention was made of California's unwaivable right to a jury trial.

On July 27, 2020, during argument on Defendants' motions, the trial court observed bitcoin was not tangible and therefore did not trigger California's pawnbroker statutes.  It also took note that, although the CFL provided some unwaivable rights, Gerro did not allege any cause of action arising from those portions of the CFL.

In response, Gerro submitted supplemental briefing wherein he argued:  "The CFL does not create [a] statutory right of action.  Instead, unwaivable rights under the CFL are asserted through other causes of action.  [¶]  For example, violations of the CFL may be asserted by an action under [the UCL[3]]. . . .  Plaintiff will request leave to amend the complaint to allege this cause of action."  The record in *Gerro I* does not reflect any motion for leave to amend the complaint.  When asked at oral argument

---

[2] The trial court determined that although Scratch was not a signatory to the loan agreements, it could enforce the forum selection clause because its conduct was closely related to the contractual relationship.  Gerro does not challenge this finding on appeal.

[3] The CFL does not create a private cause of action. Instead, the substantive rights thereunder may be enforced under the UCL.  (See *De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 980.)

7

before this court why Gerro had not alleged a UCL claim in *Gerro I*, he acknowledged it was an error.

On August 10, 2020, the trial court stayed *Gerro I* pending litigation in Delaware. While finding that the Commercial Code and the CFL conferred unwaivable rights upon Gerro, the trial court concluded that litigation in Delaware would not diminish those rights because "courts in Delaware will apply California law when fundamental California public policy is at issue."[4]

The trial court also observed that, when the Delaware litigation concluded, "any party may utilize this action to domesticate the sister-state judgment, subject to the requirements set forth herein, i.e., that the sister-state court has afforded the plaintiff his unwaivable rights in accordance with fundamental California public policy. The California court has the power to refuse to enforce a sister-state judgment which violates due process."

The next day Gerro appealed the trial court's order.

On August 18, 2020, less than a week later, Gerro filed another complaint in Los Angeles Superior Court against BlockFi, BlockFi, Inc. (BlockFi's parent company), and Scratch arising from the same loan transactions, this time alleging causes of action for violation of the UCL, the FAL, civil conspiracy, and aiding and abetting. Gerro's claims for violation of the UCL and

---

[4] In its tentative ruling, the trial court stated Gerro had not cited any authority for the proposition that California's pawnbroker law constituted fundamental public policy. Following supplemental briefing, the trial court concluded that sections of the Commercial Code and the CFL provided Gerro with unwaivable rights. The ruling was silent as to the pawnbroker laws.

FAL were based on, inter alia, BlockFi's alleged violations of California's pawnbroker statutes and Commercial Code section 9207, subdivisions (b)(4) and (c)[5]—the same statutory violations alleged in *Gerro I*.

The trial court ordered *Gerro I* and *Gerro II* related.

Defendants then moved to stay or dismiss *Gerro II* pursuant to the Delaware forum selection clause and demurred on the basis that *Gerro I* alleged the same causes of action. Although the trial court denied Defendants' motion to dismiss based on the forum selection clause (relying upon the public interest in enjoining unfair business practices under the UCL and FAL on behalf of Californians), it granted Defendants' demurrer to *Gerro II* on the basis that, under *McGill v. Citibank,*

---

[5] Commercial Code section 9207, subdivision (b)(4) states: "Except as otherwise provided in subdivision (d), if a secured party has possession of collateral, all of the following apply: [¶] . . . [¶] . . . (4) The secured party may use or operate the collateral for any of the following purposes:  [¶] (A) For the purpose of preserving the collateral or its value.  [¶] (B) As permitted by an order of a court having competent jurisdiction. [¶] (C) Except in the case of consumer goods, in the manner and to the extent agreed by the debtor."

Commercial Code section 9207, subdivision (c) states: "Except as otherwise provided in subdivision (d), a secured party having possession of collateral or control of collateral under [Commercial Code s]ection 7106, 9104, 9105, 9106, or 9107 may or shall, as the case may be, do all of the following:  [¶] (1) May hold as additional security any proceeds, except money or funds, received from the collateral.  [¶] (2) Shall apply money or funds received from the collateral to reduce the secured obligation, unless remitted to the debtor.  [¶] (3) May create a security interest in the collateral."

*N.A.* (2017) 2 Cal.5th 945 (*McGill*)'s interpretation of Proposition 64, *Gerro II* must be deemed to seek individual remedies. The trial court thereafter entered an interlocutory judgment in favor of Defendants pursuant to Code of Civil Procedure section 597. Gerro timely appealed the judgment, arguing that *Gerro II* need not be stayed because it does not involve the same primary rights as *Gerro I*.

     2.    *Appellate History*

On August 11, 2020, Gerro initiated the appeal in *Gerro I*, and briefing in that matter was completed on July 22, 2021.

On April 29, 2021, Gerro initiated the appeal in *Gerro II*, and filed his opening brief in that matter on September 20, 2021.

On September 23, 2021, we requested supplemental briefing from the parties as to whether the appeals in *Gerro I* and *Gerro II* should be consolidated for purposes of oral argument and our opinion. On October 4, 2021, the parties filed letter briefs; Defendants argued against consolidation and Gerro argued in favor of it.

On October 19, 2021, the parties appeared before this court for oral argument in *Gerro I*.

On November 10, 2021, we vacated submission of *Gerro I* and ordered the appeals consolidated for oral argument and decision. Following extensions of time for Defendants to file their responsive brief and for Gerro to file his reply brief, on January 14, 2022, *Gerro II* was fully briefed.

On April 19, 2022, the parties appeared for oral argument a second time, and the matter was thereafter submitted for decision.

On April 22, 2022, BlockFi requested we again vacate submission of the matter to allow it to file a letter brief further

10

addressing its counsel's proposed oral stipulations to waive and not to enforce the contractual waiver of jury trial in its loan agreements with Gerro and to provide additional authority on Delaware jury trial law and whether Delaware would enforce such a stipulation.  On June 7, 2022, we denied that request.

## DISCUSSION

### A.   *Gerro I* and *Gerro II* Improperly Split a Cause of Action Because They Involve the Same Primary Rights

A plaintiff may not split a cause of action among multiple lawsuits.  (Code Civ Proc., § 430.10, subd. (c); *Crowley v. Katleman* (1994) 8 Cal.4th 666, 681-682.)  Under California law, a cause of action is defined as " 'the violation of a single primary right.' [Citation.]" (*Boyd v. Freeman* (2017) 18 Cal.App.5th 847, 854.)  Thus, pleading the violation of one primary right in two suits "contravenes the rule against 'splitting' a cause of action." (*Crowley, supra*, at p. 681.)

"[T]he primary right is simply the plaintiff's right to be free from the particular injury suffered." (*Crowley v. Katleman, supra*, 8 Cal.4th at p. 681.)  It is not the same as the legal theory on which liability for that injury is premised.  An injured party may allege multiple legal theories in seeking redress for a single injury.  (See *id*. at pp. 681-682.)  Nor is a primary right the same as the remedy sought.  " 'The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other.' " (*Id*. at p. 682.)

11

When a plaintiff impermissibly splits a cause of action, the second action may be abated based on the prior, pending action. (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1146.) " 'A plea in abatement is essentially a request—not that an action be terminated—but that it be continued until such time as there has been a disposition of the first action.' [Citation.]" (*Lawyers Title Ins. Corp. v. Superior Court* (1984) 151 Cal.App.3d 455, 459.)[6]

Code of Civil Procedure section 430.10, subdivision (c) authorizes a demurrer where "[t]here is another action pending between the same parties on the same cause of action." (See *People ex rel. Garamendi v. American Autoplan, Inc.* (1993) 20 Cal.App.4th 760, 773.) We review de novo an order sustaining a plea in abatement on a demurrer. (See, e.g., *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)

Gerro contends his two lawsuits do not involve the same primary right because *Gerro I* seeks redress for his *personal* injuries and *Gerro II* seeks a *public injunction*. In light of *McGill, supra,* 2 Cal.5th 945, this argument is unavailing.

Following the passage of Proposition 64, *McGill* considered whether private individuals could nevertheless seek public injunctive relief under the UCL and FAL without meeting class

---

[6] At times, however, "nothing more [may be] accomplished by sustaining [a] plea [in abatement] than a continuance with its inconvenience to the parties and witnesses." (5 Witkin, Cal. Procedure (6th ed., 2022) Pleading, § 1179.) "[T]he better practice in such a situation would be for the trial judge to recognize the technical sufficiency of the plea in abatement, and then to order the actions consolidated." (*Ibid.*, citing *Bank of America v. Cohen* (1937) 21 Cal.App.2d 510, 512.)

action requirements.[7]  Notwithstanding Proposition 64's prohibition on individuals filing UCL claims on behalf of the public, the Supreme Court held that an individual "who has 'suffered injury in fact and has lost money or property as a result of' a violation of the UCL or the false advertising law [citations]— and who therefore has standing to file a private action" may "request[ ] public injunctive relief *in connection with that action*." (*McGill*, *supra*, 2 Cal.5th at p. 959, italics added.)

Importantly, the high court explained:  "A person who meets these [standing] requirements *is 'fil[ing]' the 'lawsuit[ ]' or 'action[ ]' on his or her own behalf, not 'on behalf of the general public.'* [Citations.]  This remains true even if the person seeks, as one of the requested remedies, injunctive relief 'the primary purpose and effect of' which is 'to prohibit and enjoin conduct that is injurious to the general public.' [Citation.]"  (*McGill*, *supra*, 2 Cal.5th at p. 959, italics added.)  Thus, "the remedy sought does

---

[7] "In 2004, the voters, by passing Proposition 64, amended [the UCL and FAL] to provide that private individuals may (1) file an action for relief only if they have 'suffered injury in fact and [have] lost money or property as a result of' a violation [citations], and (2) 'pursue representative claims or relief on behalf of others only if [they] meet[ ] [these] standing requirements . . . and compl[y] with [s]ection 382 of the Code of Civil Procedure,' which relates to representative suits [citations]. . . .  In uncodified sections, Proposition 64 identified the '[f]il[ing] [of] lawsuits' by private attorneys 'on behalf of the general public' as a misuse of the unfair competition laws [citations], and stated the voters' 'intent . . . that only the California Attorney General and local public officials be authorized to file and prosecute actions on behalf of the general public' [citation]."  (*McGill*, *supra*, 2 Cal.5th at pp. 958-959.)

13

not define the interests vindicated." (*DiCarlo v. MoneyLion, Inc.* (9th Cir. 2021) 988 F.3d 1148, 1158 [interpreting *McGill*].)

Following *McGill*, notwithstanding any injunctive relief or other benefit that might inure to the general public, *Gerro II*'s claims under the UCL and FAL can only exist if they are brought *on Gerro's behalf based on injuries to him*. The fact that Gerro bases his UCL and FAL claims on, inter alia, violations of California's pawnbroker statutes and Commercial Code section 9207—the same statutory violations he alleged in *Gerro I* and based on the same transactions—only strengthens our conclusion that a cause of action is being split. Accordingly, the trial court properly found Gerro split primary rights between *Gerro I* and *Gerro II*.

## B. Defendants Have Not Demonstrated that Gerro's Right to a Jury Trial Would Not Be Diminished in Delaware

### 1. *Legal Framework and Standard of Review*

California law favors enforceability of forum selection clauses to which the parties have agreed. (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 495.) "A mandatory forum selection clause . . . is generally given effect unless enforcement would be unreasonable or unfair, and the party opposing enforcement of the clause ordinarily bears the burden of proving why it should not be enforced."[8] (*Handoush v.*

---

[8] In his trial court briefs, Gerro acknowledged the forum selection clause is mandatory; the trial court concluded it was mandatory; and Gerro does not challenge this finding on appeal. Because the parties agree the clause here is mandatory, we will treat it as such.

14

*Lease Finance Group, LLC* (2019) 41 Cal.App.5th 729, 734, fn. omitted.) "Nonetheless, 'California courts will refuse to defer to the selected forum if to do so would substantially diminish the rights of California residents in a way that violates our state's public policy.' [Citations.]" (*Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 147.)

"[W]hen the claims at issue are based on unwaivable rights created by California statutes[, the burden is reversed and] . . . the party seeking to enforce the forum selection clause bears the burden to show litigating the claims in the contractually designated forum 'will not diminish in any way the substantive rights afforded . . . under California law.' [Citations.]" (*Verdugo v. Alliantgroup, L.P.*, *supra*, 237 Cal.App.4th at pp. 147-148.) "[A] defendant can meet its burden only by showing the foreign forum provides the same or greater rights than California, or the foreign forum will apply California law on the claims at issue." (*Id.* at p. 157.)

>  2. *Analysis*

Gerro argues *Gerro I* implicates four unwaivable rights that would be diminished in a Delaware forum, among which is the predispute right to a jury trial, a position which he has raised for the first time on appeal. Although a party's failure to raise an objection in the trial court forfeits appellate review of the issue, "it is well settled that when the issue raises a pure question of law, . . . we may consider the issue for the first time on appeal." (*Gilliland v. Medical Board* (2001) 89 Cal.App.4th 208, 219.) Given the importance of the fundamental right implicated here, we exercise our discretion to review this issue.

A California litigant's right to a jury is "fundamental," "inviolate," and "sacred in its character," and predispute

15

contractual jury waivers are contrary to California's policy. (*Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 951, 956; see *Handoush v. Lease Finance Group, LLC*, *supra*, 41 Cal.App.5th at p. 739 ["we agree that even if [the *Grafton*] rule is considered procedural, it is ' "intimately bound up with the state's substantive decision making" ' and it ' "serve[s] substantive state policies" ' of preserving the ' "right to a jury trial in the strongest possible terms" . . . , an interest the California Constitution zealously guards' "].)

In a case closely on point, *Handoush v. Lease Finance Group, LLC*, *supra*, 41 Cal.App.5th 729, the parties entered into a contract that included a New York forum selection clause and a predispute jury waiver. The *Handoush* court concluded "[b]ecause New York permits predispute jury trial waivers, and California law does not, enforcing the forum selection clause [in favor of New York] has the potential to operate as a waiver of a right the Legislature and our high court have declared unwaivable." (*Id.* at p. 739, fn. omitted; see *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 245 ["Notably, *Grafton* explicitly distinguished predispute jury waivers from predispute arbitration agreements, observing that arbitration agreements are specifically authorized by Code [Civ. Proc., §] 1281"].)

Notwithstanding *Handoush*, Defendants argue the Delaware Supreme Court has recognized that "the right to a jury trial in civil proceedings has always been and remains exclusively protected by provisions in the Delaware Constitution." (*McCool v. Gehret* (Del.Supr. 1995) 657 A.2d 269, 282.) But Defendants do not address that Delaware—unlike California and like New York in *Handoush*—permits predispute jury waivers. (See, e.g., *The*

*Data Centers, LLC v. 1743 Holdings LLC* (Del. Super. Ct., Oct. 27, 2015) 2015 WL 6662107 at p. *4, fns. omitted ["[T]he Delaware Constitution recognizes the right to trial by jury in certain civil actions. . . . Nevertheless, a party may waive the right to trial by jury several ways, including by contract. In Delaware, contractual provisions that waive the contracting parties' right to trial by jury have been held to be neither unconscionable nor against public policy"].) Nor do Defendants cite any authority demonstrating how Delaware would treat a predispute jury waiver in a situation comparable to this case.

Defendants also contend that California's policy will not be diminished because "the courts in Delaware will apply California law when fundamental California public policy is at issue." This statement significantly oversimplifies a complex choice of law question.

In addition to the Delaware forum selection clause, the loan agreements include a Delaware choice of law clause. In determining whether to enforce a choice of law clause, Delaware follows the Restatement Second of Conflict of Laws, section 187. (*Focus Financing Partners, LLC v. Holsopple* (Del.Ch. 2020) 241 A.3d 784, 803-804.) The Restatement provides that, if the parties to a contract have selected the law of a particular jurisdiction to govern their agreement, then "[t]he law of the state chosen by the parties to govern their contractual rights and duties [here, Delaware] will be applied," unless either "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or [¶] (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the

17

particular issue and which, under the rule of [Restatement section] 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."[9] (Rest.2d, Conf. of Laws, § 187(2).)

Defendants have not shown that, after utilizing a *comprehensive* choice of law analysis, Delaware would enforce Gerro's right to a jury trial. For example, Defendants have not established that a Delaware court would find California's interest in prohibiting predispute jury waivers to be materially greater than Delaware's interest in promoting freedom of contract and the Delaware courts' interest in exercising autonomy over the procedural aspects of the proceedings before it. Nor do Defendants discuss how the result might be affected given that, per their written agreement, Delaware law is supposed to apply to the parties' disputes "without regard to [Delaware's] conflicts of law provisions."

---

[9] Restatement Second of Conflict of Laws (1971), section 188 states: "(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6. [¶] (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: [¶] (a) the place of contracting, [¶] (b) the place of negotiation of the contract, [¶] (c) the place of performance, [¶] (d) the location of the subject matter of the contract, and [¶] (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. [¶] These contacts are to be evaluated according to their relative importance with respect to the particular issue."

18

Defendants' offer to stipulate that the Delaware court should apply California law gives us little assurance that a Delaware court would enforce such a stipulation under the facts present here. (See *LTL Acres Ltd. Partnership v. Butler Mfg.* (Del. 2016) 136 A.3d 682, 685, fn. 2 [choosing to apply its own law notwithstanding a Rhode Island choice of law provision because the parties stipulated Delaware law was the same]; *American Intern. Group, Consol. Deriv. Lit.* (Del.Ch. 2009) 976 A.2d 872, 882, fn. 17 [collecting cases in footnote that a party can forfeit enforcement of a choice of law clause by failing to raise it in a timely fashion]; *In re Asbestos Litigation* (Del. Super. Ct., June 1, 2012) 2012 WL 2007291 [accepting without analysis the parties' stipulation to apply Arkansas law and without any indication whether the matter concerned a choice of law or forum selection clause and the terms thereof].)

The terms of Defendants' offer to stipulate also give us pause. The proposed stipulation language is equivocal and conditional: "[I]f [Gerro] can sustain a viable claim implicating some unwaivable California right or fundamental California public policy that it cannot pursue under Delaware law, [Gerro] may pursue any such claims in Delaware under California law." Although Defendant's counsel strengthened his proposed terms at oral argument, we observe that negotiation with Gerro was never part of the stipulation process and that a binding client authorization was never presented.

Nor is it clear what protection the California trial court could provide to Gerro if the matter were heard in Delaware. Although California Code of Civil Procedure section 1710.40 states a judgment "may be vacated on any ground which would be a defense to an action in this state on the sister state judgment,"

19

such grounds are limited.  Neither Defendants nor the trial court sufficiently addressed how vacating a judgment under section 1710.40, or refusing to enforce a Delaware judgment, would protect Gerro's unwaivable rights.

Accordingly, Defendants have not met their burden of establishing that litigating in Delaware " 'will not diminish in any way' " Gerro's unwaivable rights.  (See *Verdugo v. Alliantgroup, L.P.*, *supra*, 237 Cal.App.4th at p. 147.)[10]

## C.     Consolidation Vel Non of *Gerro I* and *Gerro II* Is a Matter for the Trial Court

Gerro invites us to resolve both appeals by remanding the matters with instructions that the trial court consolidate *Gerro I* and *Gerro II* for all purposes.  We reject this invitation because Gerro raised this argument for the first time in his reply brief in *Gerro II*.  "We will not consider arguments raised for the first time in a reply brief, because it deprives [respondents] of the opportunity to respond to the argument."  (*Mansur v. Ford Motor Co.* (2011) 197 Cal.App.4th 1365, 1387-1388.)  Further, whether the trial court should allow Gerro to amend either complaint, dismiss a complaint, consolidate the matters (see *Shuffer v. Board of Trustees* (1977) 67 Cal.App.3d 208, 217-218), or prohibit further pleading amendments presents a case management question that is entrusted to the trial court in the first instance. (*Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 284-285 ["A court has inherent equity, supervisory and

---

[10] In light of our ruling as to Gerro's unwaivable jury trial right, we do not address Gerro's assertion of other unwaivable rights that he claims would be diminished were the case to proceed in Delaware.

administrative powers, as well as inherent power to control litigation and conserve judicial resources.  [Citation.]  Courts can conduct hearings and formulate rules of procedure where justice so demands"]; see, e.g., *IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 653 ["Motions for leave to amend are left to the sound discretion of the trial judge"].)

## DISPOSITION

We reverse the trial court's August 10, 2020, order staying the California proceedings in *Gerro I* and remand for further proceedings.  We affirm the trial court's interlocutory judgment in *Gerro II*.  Each party shall bear its costs on appeal.

NOT TO BE PUBLISHED


CRANDALL, J.*


We concur:



ROTHSCHILD, P. J.



BENDIX, J.

---

*\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.*